White, J.
The only questions noticed by counsel in their arguments, have relation to the respective rights and liabilities of Sutliff, the lessor, as second assignee, and Atwood, the lessee, in regard to the rents that accrued aftér the former became possessed of the term as such assignee. This seems to have been the only matter upon which the motion for a new trial was reserved, and to this, alone, our examination will be confined.
I. Some of the covenants contained in the lease are personal only in their nature. But, laying out of view, for the present, the making of the notes referred to in the lease, the *192 liability to pay tbe annual rent, though it may have been increased in respect of the personalty to be used in connection with the land, would not thereby lose the legal character of rent; but, at least, while the subject of the demise remained entire, would run with the land.
It is not essential to the liability of the assignee of the lessee, for the rent subsequently to accrue, that the leasehold should have remained in the same plight and condition as when demised. Part of it may have been lost or destroyed, yet this would not lessen the right of the lessor to demand the stipulated rent, either of the lessee, or of those standing in his shoes by privity of estate. If the assignee takes the whole leasehold interest remaining, from which the rent is to issue, he becomes liable to the lessor for the whole rent while he holds.
If there has been no severance of the leasehold, so as to leave part of it in the lessee, and vest in the assignee only a part, it would not fall within the rule laid down in Fulton and Kirker v. Stuart, 2 Ohio Rep. 216, nor the principle recognized in Jones v. Smith, 14 Ohio Rep. 606. The point decided in the last case was, that “ a lease of a house and lot with the furniture, can not be assigned, so as to enable the assignee of the reversion to sue for the rent in his own name, unless the entire interest of the lessor is passed by the deed.” It was an action of covenant, and in no event could the assignee have maintained that action at common law; for the privity of contract was wanting, and privity of estate alone would not sustain the action of covenant, without the aid of the statute of 32 Hen. 8, which has not been adopted in this state. Crawford v. Chapman, 17 Ohio Rep. 449.
It is claimed that, as the dairy cows on the farm, which the lessor was to increase to the number of forty-five, were personal property; and, as the amount of rent must have been fixed with reference to their use, as well as the use of the realty, the obligation to pay the annual rent of five hundred dollars was personal only.
Although “ the rent reserved was increased in respect of *193 the stock, yet the rent did not issue out of the stock, but out of the lands only.” Spencer’s Case, 5 Coke 16 b:, resolution 3.
The demise was of a dairy farm, and the compensation was, by the express terms of the lease, to be rent. The use of the cows was a mere incident to the farm let, designed to aid the lessee in carrying on the business to which it was peculiarly adapted; but, not to change the legal character of the.obligations of the parties from what they would have been had the use of the cows not been included.
In the case of Burnett v. Lynch (5 B. & C. R. 289), the lease included “ the use of certain household goods, furniture, fixtures, and other things mentioned in a schedule annexed to the lease,” the use of which must have formed in part the consideration for the covenants of the lessee.
It should be noticed that the quotation in the opinion in Jones v. Smith, 14 Ohio Rep. 608, taken from Coke, is an extract from the third resolution in Spencer’s Case (5 Coke 16 b. S. C., 1 Smith’s L. C., side p. 24), and that the covenant there spoken of as not binding the assignee of the covenantor, does not refer to_the covenant to pay the rent for the house and lands with the stock, though the rent was increased in, respect of the stock; but to the covenant of the lessee to re~ deliver the stock or sum of money .at the end of the term. This is apparent from a reading of the whole of the resolution ; though it would seem not to have been so understood by Chief Justice Wood in delivering the opinion referred to.
II. Rent is defined to be a certain profit issuing yearly out of lands and tenements. It is the compensation rendered for their use by the person permitted to hold or enjoy them, and is á species of incorporeal hereditament. 2 Bla. Comm. 43. If it has accrued, it goes to the administrator as personal estate, if not, it descends to the heir. Where, in the proper sense of the term, it exists, it necessarily lessens the value of the interest of the lessee, and, as those who step into his-shoes become liable to the lessor, such liability of course diminishes the price for which the leasehold interest will sell. Distress was a remedy, it is true, incident to rent, at common* *194 law, for its collection; but, the abolition of this .remedy did not destroy the other legal qualities of rent.
III. There are two sorts of obligations by which tenants are liable to the lessor, viz.: those which arise from express agreement between the parties, and such as are implied. The latter are such as the law raises from the relation of the parties, in the absence of any agreement between them on the subject. The liability of the lessee, in respect to the latter, will be discharged by an assignment with the assent of the lessor, for thereby, the privity of estate, upon which it depends, is destroyed, and the implied covenant or agreement canceled. But the liability of the lessee, arising from express contract, is so permanently fixed during the whole term, that no act of his own can absolve* him from the lessor’s demands in respect to it. An assignment with the lessor’s concurrence, and his subsequent receipt of rent from the assignee will be ineffectual for this purpose. The lessor, where there is an express agreement of the lessee, may sue, at his election, either the lessee or the assignee, or, may pursue his remedy against both at the same time, though he can have, of course, but one satisfaction. Mills v. Aurial, 1 Smith’s L. C. 918; Thursby v. Plant, 1 Wms. Saunders, 241 (note 5); Platt on Covenants, side pp. 490, 491, 494.
But, though both are thus liable to the lessor, yet the ultimate liability, as between themselves, can not depend upon which ■of the two he may, from interest or caprice, elect to pursue to the satisfaction of his demand. The estate is the consideration which the lessor furnished for his demand for rent, and .from which it was expected to issue. The privity of estate •between the lessor and the lessee, and upon which the personal liability of the latter was bottomed, having ceased, and by the assignment passed to the assignee, the latter, as between himself and the lessee, in the absence of any agreement, .is to be regarded as primarily liable for the rent, and the personal liability of the lessee as collateral thereto. The lessee ■•is liable in the nature of a surety for the assignee during tho .continuance of his interest, and, although not bound by an *195 express promise, yet the law imposes a duty upon him .to perform the covenants while he enjoys the estate. Smith v. Peat, 9 Exch. R. 161; Taylor’s L. & T. Sec. 448; Main v. Feathers, 21 Barb. R. 646; Burnett v. Lynch, 5 B. & C. 289 (S. C. 8 Dow. & R. R. 868); Humble v. Langston, 7 Mees. & Welsh. 530; Wolveridge v. Stewart, 1 Compt. & Mees. 659 (S. C. 3 More & Scott 569, in 30 E. C. L. 316).
The case last named was an action of covenant brought by the assignor, who was the lessee, against the assignee. The assignment was by indenture indorsed on part of the lease and stated to be “ subject to the payment of the rent and the performance of the covenants and agreements reserved and contained in the lease.” It was held that the assignee was not liable in covenant to the lessee for the rent which the lessee had been called on by the lessor to pay, after the assignee had assigned over. The court were of opinion that the proper construction of the indenture was, that the words referred to were those of qualification, and not of contract. That they created no agreement between the parties, but were merely descriptive of the obligations to which the assignee would be liable as between him and the lessor. And it is said by Den-man, C. J., who delivered the judgment, that Burnett v. Lynch proceeded upon the ground that during the continuance of the interest of the assignee, there is a duty on his part to pay the rent and perform the covenants. “This duty, we think” (he adds, p. 660), “ would arise, from the mere relation between the parties, without any such words as those now under consideration ; for the effect of the assignment is, that the lessee becomes a surety to the lessor for the assignee.”
The same principle was recognized in Stains v. Morris (1 Ves. & Bea. 11), where the Lord Chancellor — Eldon—supposes, instead of an assignment actually executed by the lessee xo the assignee, the question had arisen upon an agreement between them for the purchase and assignment of the term, and a bill filed for the execution of that agreement. The question then would be, what ought to be the nature, form, and terms of the instrument, by which that agreement ought *196 to be specifically performed. And on page 12, it is answered, that if the original assignor enters into a covenant for the title, and the assignee takes the premises, in the question, as between the assignor and assignee, the former has a right to say to the latter, “ you stand, as between us in the situation in which I originally stood to the lessor; and if he, under the express covenant, resorts to me, you taking the premises from me, it is fit, that the rent, if paid by me, should be reimbursed to me by you.” It might seem from what has been thus stated that the right to the covenant for indemnity would de - pend upon the fact of their being a covenant on the part of the assignor for the title. But not so. The purchaser, knowing he is not to have a covenant for the title, in a case where he is not entitled to it, gives a price accordingly for the estate without such covenant. He buys the covenant of the lessor. (Idem. p. 13). It .was accordingly held, in that case, that under a contract for the assignment of a term, whether from the original lessee, or a mesne assignee, the purchaser must covenant for indemnity against payment of rent and performance of covenants; though he can not have a covenant for the title from the assignor; for the reason that he was an executor ; and also from the fact that at the sale, notice was given that he would not so covenant.
It will be observed that this was a case in equity, being a bill in chancery for the specific performance of an agreement entered into by the defendant for the purchase of leasehold property. The question for the determination, of the chancellor was, not the rights of the parties upon a legal assignment already made and accepted, but, the nature and terms of the legal instrument which the purchaser should execute in the proper performance of the agreement. The legal duty of an assignee, arising from an assignment executed without covenants on his part, to perform the covenants of the lessee, is limited to the time of the continuance of his interest, He is liable only in respect to his possession. He bears the burden while he enjoys the benefit. He is liable only for covenants broken while he remains possessed of the estate; and *197 although he assigns over, he is, notwithstanding, liable for all such breaches as occurred during the time of his enjoyment, because the right of action having once vested in the lessor, for breaches committed by the assignee, can not be divested by the re-assignment of the latter, although the privity of estate is destroyed between them, and a privity of contract never existed. But he is not chargeable for a breach of covenant happening after his assignment, for the privity of estate is wanting; nor, for the same reason, is he liable upon a breach which happened previous to the assignment to him. His liability will not continue though the assignment be made for the express purpose of getting rid of his responsibility. Taylor’s L. & T. sections 449, 452, 458, and cases already cited.
Such are the rights of an assignee at law, under a legal assignment, without covenants of indemnity. In view, however, of the consequences that might result to an assignor (bound by express covenant to pay the rent for the whole term), from subsequent reassignments to irresponsible persons, a court of equity when called on to enforce the specific performance of an agreement of sale would imply an understanding between the parties, that the purchaser, in taking the place of the seller as to all the benefits yielded by the lease, was expected to do so upon the condition of assuming to relieve him of its burdens. And to make this understanding effectual, equity would require covenants of indemnity. Pember v. Mathers (1 Bro. C. C. 52), is cited as being contrary to the idea of any right of indemnity existing at law or equity unless expressly stipulated for. But read in the light of the distinction referred to, between the legal and equitable rights of the parties, it clearly recognizes that when the assignment is to be made, under the supervision of a court of equity, in the performance of an agreement to assign, an express covenant will be required to be inserted by the assignee in favor of the assignor, indemnifying the latter to the extent that he maybe bound for future rents and the subsequent performance of covenants running with the land.
*198 IV. In the present case, however, the plaintiff stands in the shoes of the purchaser of the lease sold at sheriff’s sale. Hia rights and liabilities are those of an assignee at' law only. He took possession and assumed the management of the premises, and, while he held, would be bound for the rent that would accrue. Taylor’s L. & T. sec. 456, Holford v. Hatch, Doug. R. 184-5; Thomas v. Pemberton, 7 Taunt. R. 207; Carter v. Wane, 4 C. & P. 191.
The rights and liabilities of the plaintiff and defendant, as to each other, growing out of the sale, are neither greater nor less than they would have been had they been strangers to the original lease. Whether the term became merged in the fee, or not, will make no difference. The liability of the defendant, as lessee, is personal, upon his express promise to pay rent. It does not depend upon privity of estate. But if Quimby, a stranger to the original lease, would be bound to pay the rent, the liability would devolve' upon the plaintiff, the lessor, on his purchasing the former’s interest. And as, after he took the place of the assignee, his right to demand the rent, thereafter to accrue, would be equaled by his liability to pay it, the two demands must be deemed compensated.
V. The effect of the notes, in this ease, while retained by the lessor, is Hot different from what it would have been if they had been non-negotiable. While thus retained, they impose no greater liability upon the maker, nor confer any greater right on the payee, than would an express promise contained in the lease. The negotiation of the notes would be an assignment of the rent, and the effect would be the same as if a bill or order had been drawn by the lessor, in favor of the person to whom they were negotiated, on the lessee, and accepted by him payable at the times at which the notes matured. In case of such negotiation, what the effect of the direct personal liability of the lessee to a third person might be, as to the rent thus assigned, it is not necessary now to inquire. The question here is, did the fact of their execution *199 operate as a payment in advance of the rent for the whol'6 term? — or rather, what would, in the absence of the notes, have been rent. Eor, if the notes were a satisfaction, when given, no rent, in the. proper sense, would exist in the case. It would be the same as the payment of a sum of money in gross, or the giving of any other distinct and independent consideration, for the demise of the whole term. There certainly could be no objection to the payment, in advance, of the full consideration for the term, and, if this be the true construction of the agreement of the parties, there would be no rent to accrue. The lessor would have received full satisfaction for the demise before the term commenced. A consideration of the terms of the lease in question, satisfies us that such is not its true construction. If the lessee had become insolvent and assigned his interest, or the same had been sold on execution, we do not think the assignee, while in the enjoyment of the property, could have answered the demand of the lessor for subsequent rent by pleading the mere making of the notes as a satisfaction.
YI. The plaintiff asked the court to charge: “ That if the defendant, in consequence of such purchase and possession thus taken and acquired, was entitled to such deduction from rent, it would only be to such reasonable extent as the plaintiff might have made in the reasonable management of the property in the condition in which it was, and during the time and during the season in which he had it, and having regard to the expense necessary to be incurred in a reasonable management of the property.” This was refused; and we think, properly. The lease fixed the value of the rent as between the parties and their privies. 'J ■
So far as the present case is concerned, there is another reason why there should be no such diminution. To the extent of the alleged waste, the damages recovered furnished an equivalent for, and replaced the waste; and the property, therefore, remaining the same, or what is equivalent, there could be no grounds on which to abate the rent. •
*200 The motion, for a new trial will be overruled, and judgment entered on the verdict.
Brinkerhoee, C.J., and Scott, and Welch, JJ., concurred.